### INTERNAL REVENUE AGENT v. SULLIVAN et al.

(District Court, W. D. New York. March 2, 1923.)

**1. Witnesses ⊙═298—Constitutional protection against incrimination applies to production of books and papers.**

The constitutional provision against compelling a person to be a witness against himself applies with equal force to oral testimony and to the production and examination of one's books and papers.

**2. Witnesses ⊙═307—Arbitrary claim of privilege is insufficient.**

An arbitrary refusal to produce books and papers, on the ground that they would tend to incriminate, standing alone, is insufficient to warrant denial of a motion to compel their production.

**3. Witnesses ⊙═308—Privilege allowed, if there is possibility testimony will incriminate.**

In determining whether the asserted invasion of constitutional rights against compulsory self-incrimination is put forth in good faith, the claim of privilege should prevail, unless it is clear that the evidence obtainable cannot by any possibility criminate the witness, and, if reasonable doubt exists in relation thereto, the claim should be allowed.

**4. Witnesses ⊙═298—Facts held to show sufficient ground for claim of privilege.**

On a motion by an internal revenue agent to compel the production of books and papers for the ascertainment of the income of respondent, made under the authority of Revenue Act, §§ 1308, 1310 (a), a claim by accused that the production of the books might tend to incriminate him, and be used against him in the trial of an indictment then pending against him for defrauding the government in the purchase of army supplies, states facts sufficient to show that the production of the books might apprise the government of evidence to be used in the prosecution against him, of which it otherwise had no knowledge, so that the motion will be denied without prejudice to a renewal after a trial under the indictment.

**5. Witnesses ⊙═304(3)—Protection given income tax returns not sufficient to protect immunity from incrimination.**

Under Revenue Act, § 257, making income tax returns public records, but open to inspection only under rules and regulations, and regulation 62, providing for furnishing the original income return and supplementary statements upon the written request of the Attorney General to a United States attorney for use as evidence before a grand jury, or in litigation in any court where the United States is interested in the result, the information obtained from a compulsory production of books to show income is not sufficiently protected to warrant the granting of a motion to compel such production, notwithstanding a claim of privilege under Const. Amends. 4 and 5.

At Law. Application by the Internal Revenue Agent in charge of Internal Revenue District No. 28 of New York against Frank T. Sullivan, individually and as an official of the Aeroplane Lumber Company, Inc., and the Aeroplane Lumber Company, a partnership, to compel the production of books and papers. Application denied without prejudice to a renewal after trial of respondent on an indictment pending against him.

---

⊙═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Selby G. Smith, Asst. U. S. Atty., of Buffalo, N. Y., for petitioner.
Daniel J. Kenefick, of Buffalo, N. Y., for respondents.

HAZEL, District Judge. This is an application by the petitioner, internal revenue agent, to require the respondent Frank T. Sullivan to produce all records, books, papers, accounts, and other documentary evidence pertaining to the incomes of himself, the Aeroplane Lumber Company, a corporation, and the Aeroplane Lumber Company, a partnership, for the years 1917 to 1921, inclusive, and make submission thereof for examination and audit of returns to determine tax liability.

Revenue Act, §§ 1308 and 1310 (a) being found at 42 Stat. 310, authorizing such examination and production of books and papers, read as follows:

"Sec. 1308. That the Commissioner, for the purpose of ascertaining the correctness of any return or for the purpose of making a return where none has been made, is hereby authorized, by any revenue agent or inspector designated by him for that purpose, to examine any books, papers, records, or memoranda bearing upon the matters required to be included in the return, and may require the attendance of the person rendering the return or of any officer or employee of such person, or the attendance of any other person having knowledge in the premises, and may take his testimony with reference to the matter required by law to be included in such return, with power to administer oaths to such person or persons."

"Sec. 1310. (a) That if any person is summoned under this act to appear, to testify, or to produce books, papers, or other data, the District Court of the United States for the district in which such person resides shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, or other data."

Section 257 (42 Stat. 270), in so far as material, reads:

"That returns upon which the tax has been determined by the Commissioner shall constitute public records; but they shall be open to inspection only upon order of the President and under rules and regulations prescribed by the Secretary and approved by the President."

Respondent, at the hearing, expressed a willingness to produce the books and papers of the Aeroplane Lumber Company in his possession, but refuses to produce his individual books and papers, and those of the partnership consisting of himself and one Phillips, on the ground that to do so might tend to criminate him, and might furnish evidence to the prosecution of an indictment now pending against him in the Supreme Court of the District of Columbia, and therefore he claims the protection of the Fourth and Fifth Amendments to the Constitution of the United States.

The indictment pending against him is for conspiracy to defraud the United States during the year 1920 in transactions relating to the purchase of lumber from the government and the subsequent sales thereof. The questions involved are of the utmost importance. No decisions determinative of the right of a person to refuse compliance with section 1308 of the Revenue Act, on the grounds above mentioned, are submitted to me, and presumably there are none.

[1] At the outset it may be stated that the law is well settled that

the constitutional provision against compelling a person to be a witness against himself or self-incrimination applies with equal force to oral testimony and to the production and examination of one's books and papers. Boyd v. U. S., 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746. Indeed in Counselman v. Hitchcock, 142 U. S. 547, 12 Sup. Ct. 195, 35 L. Ed. 1110, the Supreme Court substantially stated that this rule of personal guaranty and protection was not limited to a criminal prosecution; that it applied to a witness in an investigation, and, if the testimony tended to show that he himself had committed a crime, he could refuse to testify unless immunity against prosecution for the offense was provided by statute. In Lewisohn v. O'Brien, 176 N. Y. 253, 68 N. W. 353, the Court of Appeals of this state in effect held that a witness was privileged from testifying if it appeared that the question was of such a nature that it could fairly be perceived that an answer thereto might incriminate him; that it rested with himself to answer the question or not; and further that, if in such a case the witness states upon oath that his answer would criminate him, no testimony can be required of the fact.

[2, 3] In Ballinger v. Fagin, 200 U. S. 186, 26 Sup. Ct. 212, 50 L. Ed. 433, the production of books was required to establish that the witness had dealings with an indicted bank employee. In refusing to answer certain questions, on the ground that an answer might tend to incriminate him, the witness, in support of his refusal, called attention to certain proceedings pending against him, charging him with participating in a bucket shop and subjecting him to prosecution under the laws of the state. The Supreme Court held that the facts showed ground for claiming constitutional privilege. An arbitrary refusal to produce books and papers, or a refusal to produce on the ground of crimination, standing alone, would not be deemed sufficient. The courts ordinarily determine whether the asserted invasion of constitutional rights is put forth in good faith, and the claim of privilege ordinarily should prevail, unless it is clear that the evidence obtainable from the books and papers can not by any possibility criminate him. If reasonable doubt exists in relation thereto, the asserted privilege should be allowed. Brown v. Walker, 161 U. S. 591, 16 Sup. Ct. 644, 40 L. Ed. 819.

[4] There is nothing contained in the papers before me indicating bad faith, or that the fears of respondent are unreal, or that they arise from a remote or improbable possibility. The facts sufficiently show that to produce his books for inspection and examination may apprize the government of evidence or a link in a chain of circumstances that may tend to convict him of the crime of conspiracy, for which he is indicted and now awaiting trial. The contention of the government, that it is not specifically claimed by respondent that the books, if produced, will criminate him of a violation of the Income Tax Law, or that no subpœna has been issued in connection with the conspiracy charge, requiring their production, or that primarily the examination and testimony is only to determine taxable income, is not in this aspect of material importance.

[5] Such, then, being the law and the facts, it becomes a matter of importance as to whether the internal revenue agent must be restrained in his search for information relating to the taxable income of respondent. The right of inspection and examination should not be denied on the ground of unreasonable search, if complete protection from discovery can be given, for, like others, the respondent must submit to the proper procedure for the collection of taxes on his income, or to the procedure for ascertaining the correctness of any return that may have been filed by him. But it is patent that he cannot, under any rule familiar to me, obtain the complete protection in his constitutional rights to which he is entitled, if the motion is granted. Congress has not provided immunity for the protection of a person testifying as a witness in such a proceeding as this, either orally or by the enforced production of books and papers. In Re Strauss, Fed. Cas. No. 13,548, the court held that a person subpœnaed before the revenue assessor must produce his books and papers for inspection and examination, even though the constitutional provision (article 4 of Amendments) giving protection from unreasonable searches is invoked. Careful reading of the opinion of the court, however, shows that the primal ground upon which the objection was overruled was because at such time there was in force, for the protection of persons making disclosures as parties or testifying as witnesses, a provision that such testimony "shall not be used against [the party] in any manner before any court of the United States or any officer thereof"; but that statute (section 860, R. S.) was repealed in 1910.

The Supreme Court of the United States and the Court of Appeals of this state have many times, it seems to me, spoken emphatically upon this subject. Interstate Commerce Commission v. Brimson, 154 U. S. 447, 14 Sup. Ct. 1125, 38 L. Ed. 1047. In People ex rel. Ferguson v. Reardon, 197 N. Y. 236, 90 N. E. 829, 27 L. R. A. (N. S.) 141, 134 Am. St. Rep. 871, the Attorney General of this state undertook to enforce the general examination of private books and papers of a person suspected of having violated the state statute in transferring stock without paying taxes thereon. The defendant invoked the Constitution of the state, similar to the Fifth Amendment, and the learned court said:

"This kind of an inquisition and the attempt to secure from an individual evidence which may be used to convict him of a crime or to forfeit his property comes well within the principles which have been applied to the interpretation of the Constitution. * * * Emery's Case, 107 Mass. 172; * * * Boyd v. U. S., 116 U. S. 616; Counselman v. Hitchcock, 142 U. S. 547."

In the later Case of Rouss, 221 N. Y. 81, 116 N. E. 782, the same court substantially said that the witness is not only limited to protection from testifying in criminal courts, but his privilege applies to any disclosure which tends to expose him to punishment for crime.

Some analogy to the case at bar is suggested in the rule requiring a bankrupt to produce his books and papers, though he pleads his constitutional privilege. The principle governing these adjudications arises from section 70 of the Bankruptcy Act (Comp. St. § 9654), which vests the trustee, by operation of law. not only with all the prop-

erty of the bankrupt, but also the books, papers, and documents relating thereto. The Supreme Court, in the Harris Case, 221 U. S. 274, 31 Sup. Ct. 557, 55 L. Ed. 732, in answer to the argument that the Bankruptcy Act did not afford protection from incriminating information ascertained from the bankrupt's books, said that:

> "If the order to the bankrupt, standing alone, infringed his constitutional rights, it might be true that the provisions intended to save them would be inadequate and that nothing short of statutory immunity would suffice."

The court proceeded to say that it was not a matter of constitutional rights that were involved; that the simple question was whether the bankrupt should be required to surrender the books and papers, which were his property but which he was no longer entitled to keep. Here the respondent has not parted with his books and papers, and a different principle applies than was applied in the bankruptcy case. It is simply a matter of constitutional rights as to him—rights and privileges that have not been waived by any act on his part and which have not been lost. In view of the Fourth and Fifth Amendments, he cannot be compelled to submit his books for examination, and by such means be required to give testimony which will put him in jeopardy of his liberty unless complete immunity is afforded. Upon this phase the statute is silent, except as provided by section 257 of the Income Tax Law of 1921, and articles 1090–1091, Reg. 62, hereinbefore quoted.

It is true that returns upon which income tax has been determined are open to inspection only upon order of the President and under rules prescribed by the secretary. The adopted rules or regulations substantially provide for furnishing the original income return and supplementary statements filed with the Commissioner of Internal Revenue upon written request of the Attorney General to the United States Attorney for use as evidence before a grand jury or "in litigation in any court where the United States is interested with the result." Such use, however, the regulation states "must be limited in use to the purpose for which it is furnished, and is under no conditions to be made public, except where publication necessarily results from such use." Supplementary statements are also subject to use on the request of the Attorney General in any litigation in which the United States is interested in the result. It is clear, I think, that the tax is ultimately determinable by consideration of the original return and supplemental statements, which presumably include statements derived from examination of the books and papers.

The government contends that the information obtained by the internal revenue agent from examination and inspection of books and papers of a taxpayer is not expressly covered by the articles and rules and, therefore he is not permitted to surrender to the United States attorney or Department of Justice the information obtained by the examination for purposes of prosecution. I do not wholly agree that the results of the examination of the books and papers become sacred, so that adequate protection is given from the mere fact that the regulations do not in terms permit the surrender of the information to the United States attorney or to the Attorney General. Section 257 and

the articles and regulations apparently were designed and intended to guarantee a measure of secrecy, but in my opinion, neither expressly nor by implication, considered separately or together, do these provisions afford immunity or protection from prosecution.

It is of course desirable that the respondent should not be permitted to circumvent the Income Tax Law or avoid payment of taxes to which he is justly liable, and therefore the order to be entered herein, denying the motion of the government, will be without prejudice to a renewal, within the statutory period, and after the trial of the respondent on the indictment pending against him. So ordered.