CHARLES C. PILGRIM, substituted administrator, *cum testamento annexo,* of Katherina Hettling, deceased, complainant-respondent,

*v.*

KATHERINA VANDEMARK, defendant-appellant, and SIMON L. FISCH, guardian, &c., et al., defendants-respondents.

[Submitted May term, 1944.  Decided September 14th, 1944.]

*Messrs. Kanter & Kanter (Mr. Elias A. Kanter),* for Katherina Vandemark.

*Mr. Simon L. Fisch,* guardian, *pro. se,* for Anneleise F. Hettling and Carl F. Hettling.

*Mr. J. Albert Homan,* for Edward L. Whelan, guardian *ad litem* of Anna Hettling.

The opinion of the court was delivered by

CASE, J.

The bill of complaint was filed by John A. Bernhard, administrator *cum testamento annexo* (now succeeded by Charles C. Pilgrim, substituted administrator *cum testamento annexo*), of Katherina Hettling, deceased, to obtain a construction of the will with respect to the provisions for certain beneficiaries and with respect to the authority of the administrator *cum testamento annexo* to make sale of a tract of land designated in the will as "the farm."

The pertinent provisions of the will are the paragraphs numbered four to nine, inclusive, and are as follows:

"4. I hereby give and bequeath to my daughter, Katherina Van de Mark, such of my clothing, jewelry and other personal property except any cash, stocks, bonds. mortgages, notes or other choses in action, as she may desire to take.

5. I hereby direct my said husband, Carl Hettling, to pay unto my said daughter, Katherina Van de Mark, the sum of Five Hundred ($500.00) Dollars in equal quarterly installments each year until such time as he may sell the farm located on Belleville Avenue. in the aforesaid Town of Bloomfield. When my husband shall sell the said farm I hereby direct him to deposit the sum of Ten Thousand ($10,000) Dollars in the Bloomfield Savings Institution in a trust account for the benefit of my said daughter Katherina Van de Mark. and direct that the interest payable on said deposit of Ten Thousand ($10,000) Dollars shall be paid over to my said daughter and I further direct that from the principal the sum of Two Hundred ($200.00) Dollars shall be paid to her each year in addition to the aforesaid interest.

6. I hereby direct that on the death of my said daughter the principal and accrued interest shall be paid over to my said husband, Carl Hettling, to be his absolutely, to him, his heirs and assigns forever; in the event that my husband shall predecease my daughter I direct that one-half of the principal and one-half of the accrued interest in said trust account shall be paid to my brother, George Hambacher, to be his absolutely, to him, his heirs and assigns forever, and one-half of the principal and one-half of the accrued interest to be paid to the Lutheran Orphans' Home in Jersey City, New Jersey, to be its absolutely, to it, its successors and assigns forever; in the event that my brother, George Hambacher, shall predecease my said daughter I direct that the share which he would have taken if alive shall go to the Lutheran Orphans' Home in Jersey City, New Jersey, absolutely, to it, its successors and assigns forever.

7. I hereby direct that when my husband sell the aforesaid farm he shall give to and pay over the sum of Five Hundred ($500.00)

Dollars to Emma Richter, the sum of Five Hundred ($500.00) Dollars to Katherina Richter, the sum of Five Hundred ($500.00) Dollars to Elizabeth Richter, and the sum of Five Hundred ($500.00) Dollars to George Richter, all of whom are the children of my deceased sister, Anna Richter, and also the sum of Five Hundred ($500.00) Dollars to my brother, George Hambacher.

8. All the rest, residue and remainder of my estate whether real, personal or mixed, of whatever nature and wheresoever situated of which I may be seized or possessed or to which I may be entitled at the time of my decease. together with all the rents, issues, profits, income and increase thereof and thereout. I give, devise and bequeath to my beloved husband. Carl Hettling, to be his absolutely, to him, his heirs and assigns forever.

9. I hereby expressly authorize and empower my said executor. at his discretion, to sell, assign, convey or mortgage the whole or any part of my estate, whether real, personal or mixed, either at public or private sale and on such terms of payment or credit as he may deem proper and to execute, acknowledge and deliver all proper and necessary deeds and/or other instruments for conveying, transferring or mortgaging of the same to the purchasers or mortgagees thereof; and to distribute the proceeds thereof according to this Will and the law."

Testatrix died November 29th, 1934, seven months after executing the will. She named her husband, Carl Hettling, as executor. She was survived by him and by her only child, Katherina Vandemark, who was a daughter by the testatrix' deceased first husband. No children were born to Katherina Hettling of her marriage to Hettling. In December, 1935, Hettling married one Anna Melching, presently mentally incompetent, by whom he had two children, Anneleise F. and Carl F., now aged about six and seven years, respectively. Carl Hettling, the father, died intestate June 24th, 1941. John A. Bernhard was appointed administrator *cum testamento annexo* to succeed him in the administration of the estate; and upon the death of Mr. Bernhard, following the filing by him of the bill of complaint herein, Charles C. Pilgrim was appointed, November 20th, 1942, substituted administrator *cum testamento annexo*.

Katherina Vandemark filed a counter-claim wherein she alleged that the will created a trust for her benefit whereunder the amount of the trust fund, $10,000, and an annual payment of $500 antecedent to the establishment of the fund was impressed and charged upon the farm lands; that the

late executor was charged with the duty of selling those lands and, from the proceeds, of paying the past due income and of depositing the sum of $10,000 in trust, for the benefit of the counter-claimant, with the Bloomfield Savings Institution; that the power of sale was not restricted by any discretion as to the producing of the said funds; and further that the said power and duty rested upon the administrator *cum testamento annexo* as the successor to the executor. The decree below adjudged that the power of sale conferred upon Carl Hettling as executor by the ninth paragraph of the will was discretionary, that it was coupled with a trust or confidence and was not transmissible, and that the substituted administrator with the will annexed did not succeed thereto; and that as a result the title to the real estate is now vested in the heirs-at-law of Carl Hettling, that is to say, Carl Hettling's children, Anneleise F. and Carl F., subject to the estate in dower or Anna Hettling, widow of Carl Hettling. From that decree Katherina Vandemark appeals. The respondents are the mentally incompetent widow and the children of Carl Hettling, appearing by their respective guardians. The substituted administrator *cum testamento annexo* and the beneficiaries under the will other than the appellant, Katherina Vandemark, do not appear here.

The first step in the construction of the will is the ascertainment of the intent of the testatrix as expressed in the instrument, and this is to be done, not by fixing the attention on single words, but by considering the entire will. *Torrey* v. *Torrey, 70 N. J. Law 672; Coyle* v. *Donaldson, 91 N. J. Eq. 138.* By the fourth paragraph the testatrix gave her daughter a limited portion of her personal effects, specifically excluding cash, stocks, bonds, mortgages, notes and other choses in action. By the fifth and sixth paragraphs she *directed* her husband to pay to her daughter five hundred dollars each year until he should sell the farm, and when— when, not if—he should sell the farm she *directed* him to deposit (obviously from the proceeds of sale) $10,000 in a trust account at the Bloomfield Savings Institution for her daughter's benefit, and she *directed* that the interest from the deposit together with $200 from the principal should be

paid to her daughter each year. The testatrix further *directed* that upon the daughter's death whatever was left of the principal, with accrued interest, was to go absolutely to her husband *if he was then living*—a contingency that must in reason be read into the gift because the sentence goes on to direct that if the husband predecease the daughter the money "shall" go to the brother of the testatrix and to the Lutheran Orphans' Home, one half to each, with the further proviso that if the brother die before the daughter, the share that he would have taken if alive "shall" go to the Lutheran Home. Paragraph seven *directs* that when—again, when, not if—the husband sells the farm he shall pay gifts totaling $2,500 to the brother, the nieces and the nephew of the testatrix.

Drawing our conclusions from the provisions of the will, we are of the opinion that the testatrix intended that $500 should be paid from her estate each year to her daughter, and that the payment was made a charge upon the residuary estate property including the designated real estate. The decedent's words are dispositive, not precatory. Her plan and expectations are too vivid and too mandatory to be weakly dependent upon the executor's volition. It is clear that, in her mind, the sale was to be an actuality, not a contingency. True, the authority in the ninth paragraph for the executor to sell was "at his discretion;" but that discretion was limited by the requirements of the will; for in the same sentence the testatrix, as though to gather up all that had been said before, enjoins upon her executor that he is "to distribute the proceeds" of sale in accordance with her will. It is clear that the testatrix intended no part of the trust fund which was to be produced by the sale of the real estate should go to her husband unless he should be alive at the daughter's death to receive it. It was not her intention that the fund which she, with painstaking care, sought to establish for her daughter, should be diverted to her husband's children by a subsequent marriage or indeed to her husband's heirs whoever they might be. That was neither her intention nor the legal effect of the instrument.

We consider that the time and the incidents of sale were left to the discretion of the executor. In that sense the sale

was to be "at his discretion." But if the directions of the will were to be carried out it was inevitable that sometime there should be a sale. The provisions of the will anticipate and count upon it. The fact that death claimed the executor before he had fully executed his duties under the will should not be permitted to accomplish a devolution of a decedent's property so wholly at odds with her expressed purpose. The gift of the *residuum,* in the eighth paragraph, to the husband was not effective to pass to him, or to his heirs, title to real estate which he, as executor, was directed to sell and upon which there was an unsatisfied charge in favor of a bequest to another beneficiary.

We think that the meaning is clear upon the face of the will; and we come to the same result if we examine into the surroundings of the testatrix when she executed the instrument and ascribe to her, so far as her language permits, the common impulses of our nature. *Torrey* v. *Torrey, supra; Coyle* v. *Donaldson, supra; Garabrant* v. *Callaway, 113 N. J. Eq. 424. Page on Wills (3d ed.),* § *1618.* Also a long line of Chancery decisions embracing *McGill* v. *Trust Company of New Jersey, 94 N. J. Eq. 657, 675; Foley* v. *Devine, 95 N. J. Eq. 473; Crocker* v. *Crocker, 112 N. J. Eq. 203; Sadler* v. *Bergstrom, 113 N. J. Eq. 567; Murphy* v. *Murphy, 118 N. J. Eq. 108; Higgins* v. *Mispeth, 118 N. J. Eq. 575; Fidelity Union Trust Co.* v. *Noll, 124 N. J. Eq. 415; 125 N. J. Eq. 106; Commercial Trust Co.* v. *Kohl, 131 N. J. Eq. 233; Trust Company of New York* v. *Greenwood Cemetery, 21 N. J. Mis. R. 169.* From the proofs it appears that the real estate in controversy was the individual property of the testatrix acquired by her before her marriage to Carl Hettling and was the only real estate owned by her at her death; that a corner had been sold from the tract by the testatrix some years before her death for $20,000; that the remainder is suitable for development into lots and is now reasonably of the value of $25,000 although regarded by the testatrix as worth twice that figure. This goes to suggest a likely reason why testatrix gave latitude to Hettling in making the sale, namely, that the marketing of the property should be at an opportune time, and that meanwhile the stated annuity should

be paid to Mrs. Vandemark. It further appears that Hettling did in fact make the annual payments to Mrs. Vandemark until the time of his death and that there is no personal property now in the estate.

All of the known incidents fit into the scheme made apparent by a comparative study of the several provisions of the will. The broad outlines of it are that the testatrix proposed to set up a fund for the benefit of her daughter, the same to be created from the sale of the farm and to be a charge upon it, with discretion to her executor for the better administration of the estate to select the time and the method of sale. We discover no reliance upon any personal trait or capacity of the executor.

The power to the executor carried through, under the statute in force at the time of the death of the testatrix, to the administrator *cum testamento annexo* and to the substituted administrator *cum testamento annexo*. The statute, *R. S. 3:17–11* (*chapter 273, P. L. 1888; Comp. Stat. p. 2262 plac. 13*), provided: "An administrator * * * with the will annexed * * * shall have the same powers and authority with respect to the sale of real estate of the testator as were given to, or vested in, the executor or executors named in the will, *whether or not such powers and authority constitute a naked power to sell real estate or a special continuing trust, and the discharge of the duties of such trust involves the exercise by the executor or executors of a discretion either in point of time or method,* * * *.*" The italicized matter had been added subsequent to the decision in *Naundorf* v. *Schumann, 41 N. J. Eq. 14,* which, construing the statute as it then was, namely, *Rev. 398 § 11,* providing that "such administrators * *. * shall have the same powers and authority, and no other, as were given to, or vested in, or may hereafter be given to or vested in the executor or executors named in said will, unless where otherwise expressly provided in the same * * *," held that where the power to sell was coupled with a trust or confidence in the executors the power did not devolve upon an administrator with the will annexed. The 1888 statute appears to have been passed to modify the effect of the holding in the *Naun-*

*dorf Case;* but whether passed with that purpose or not it did have the effect, is our opinion, of carrying over to an appointed successor a power such as that contained in the will now under review.

The will did not place the title to the real estate in Hettling as trustee, or repose in him the duties of a trustee with respect to it. The power to sell was specific and, in terms, was lodged in Hettling as executor. This distinguishes the case from such Chancery decisions as *Hegeman's Executors* v. *Roome, 70 N. J. Eq. 562,* and *Varick* v. *Smith, 67 N. J. Eq. 1,* and puts it in the line of decisions headed by *Griggs* v. *Veghte, 47 N. J. Eq. 179,* and *Cranstoun* v. *Westendorf, 91 N. J. Eq. 34.* Had Hettling sold the farm and, as executor, made the prescribed deposit in the Bloomfield Savings Institution, that fund would have become a trust fund, and some one would have occupied the status of trustee; we do not decide who, because that is not within the issues or the arguments. But events had not progressed that far. Hettling, at his death, in so far as appears from anything produced before us, was still functioning as executor. The successor in the administration of the estate has, under the statute, succeeded to the power of sale and should be so instructed.

The appeal also goes to the allowances granted in Chancery of $300 to Simon L. Fisch, Esq., appearing *pro se,* as guardian for the minors, and of $100 to J. Albert Homan. Esq., appearing for the guardian of the mental incompetent, to be paid from the *corpus* of the estate of the testatrix. There were similar allowances made to the solicitors of the complainant, of the present appellant, of the nieces and nephew of the testatrix, of the brother, and of the Lutheran Orphans Home; and from them no appeal was taken. It was in accordance with the practice that allowances should be made in Chancery to the solicitors of the incompetent and the minors, brought in by the bill as defendants. The allowances were reasonable. We are shown no just cause for disturbing them. The decree in that respect will be affirmed.

The decree below will be modified to conform herewith. The record will be remanded to the Court of Chancery for disposition consistent with this opinion.

*For modification*—The Chief-Justice, Parker, Case, Bodine, Donges, Heher, Perskie, Porter, Colie, Dear, Wells, Rafferty, Hague, Thompson, Dill, JJ. 15.